CHURCH OF THE LUKUMI BABALU AYE, INC., a non-profit corporation, Ernesto Pichardo, Plaintiffs,

v.

CITY OF HIALEAH, Silvio Cardoso, Salvatore D'Angelo, Herman Echevarria, Julio Martinez, Andres Mejides, Paulino Nunez, Ray Robinson and Raul Martinez, mayor of the City of Hialeah, Defendants.

No. 87–1795–CIV.

United States District Court,
S.D. Florida,
Miami Division.

June 10, 1988.

**1524**

Jorge A. Duarte, Miami, Fla., for plaintiffs.

Richard G. Garrett, Miami, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF COUNCILMEN AND MAYOR

SPELLMAN, District Judge.

This CAUSE comes before the Court upon Defendants', SILVIO CARDOSO, SALVATORE D'ANGELO, HERMAN ECHEVARRIA, JULIO MARTINEZ, ANDRES MEJIDES, PAULINO NUNEZ, RAY ROBINSON (Councilmen) and RAUL MARTINEZ (the Mayor), Motion for Final Summary Judgment filed with this Court on February 23, 1988.

## I] INTRODUCTION

Plaintiff, the Church of the Lukumi Babalu Aye, Inc., is a non-profit corporation, duly organized and existing under the laws of the State of Florida as a place of religious worship. In June 1987, the church acquired property in the City of Hialeah, Florida for the purpose of securing a place to practice "Santeria." The property was also to be used to establish a theological school, an Afro–Cuban museum, counseling services, and a daycare center.

"Santeria" is a Spanish word meaning the worship of saints. It is actually the name given to traditional African religions which originated in southwestern Africa, in what is known today as Nigeria. The specific religion practiced by the Plaintiffs is the Yoba (Lukumi) religion. Herbal medicine, prayer, protective charms, chants, magic, marriage and death rites, and food and animal offerings are a part of this religion. The ritual offerings of animals, mostly chickens, are conducted in association with the initiation of priests, for faith healing, and as a means of alternative therapy or crisis intervention.

The Plaintiffs allege that the Defendants, their agents and employees have, under color of state law, maliciously subjected Plaintiffs to illegal and unconstitutional harassment, threats, and discrimination, and have willfully misused their official authority to interfere with the Plaintiffs' constitutionally protected right to establish and freely exercise their religion. Plaintiffs allege a deprivation of their federal constitutional rights, particularly the first, fourth and fourteenth amendments, by the City of Hialeah, its council, its mayor and other officials by virtue of the following acts: causing a city council meeting to be held as to the issue of granting the church a city permit to use the land as a place of worship; establishing a police perimeter at the boundaries and entrance to the church property; refusing or failing to provide the church and its members with city sanitation services; intervening and causing Florida Power and Light to selectively discontinue providing electrical service to the church building; publicly inciting persons to appear at a public hearing of the City Council for the purpose of presenting protests against the Santeria religion; causing church members to be detained by police; adopting Florida Statutes Chapter 828 (Cruelty to Animals) as an emergency city ordinance; passing resolution number 87–66, reiterating the City of Hialeah's commitment to a prohibition of acts of any and all religious groups which are inconsistent with public morals, peace or safety; passing resolution number 87–90, declaring a policy to oppose ritual sacrifice of animals;

and proposing three criminal ordinances relating to the possession, sacrifice, and slaughter of animals within the City of Hialeah, one of which has become law.

Plaintiffs seek relief against the councilmen and the mayor in their *individual* capacities only for all actions taken, and this opinion is so limited. The Defendants contend they are shielded from liability in their individual capacities for the alleged wrongs committed because they were performing legislative functions and are entitled to the protection of absolute legislative immunity. The Plaintiffs and the individual Defendants agree as to the acts complained of and that the Defendants are absolutely immune if those acts are legislative acts.

■ The case therefore turns on whether the acts complained of are legislative ones. That an act is called an ordinance or a resolution is not dispositive of its legislative nature. Rather, the test turns on whether the actions occurred within the sphere of legitimate legislative activity. *Espanola Way Corp. v. Meyerson,* 690 F.2d 827 (11th Cir.1982). This Court must also determine whether the individual Defendants can be held liable for those acts clearly non-legislative, i.e. the actions by the police, city sanitation, and Florida Power & Light.

## II] IMMUNITY

■ The City of Hialeah councilmen and the mayor of the City of Hialeah, when sued in their individual capacities, are entitled to absolute immunity for alleged wrongs arising out of their legislative acts. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (holding that the decision in *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), that state legislators are absolutely immune for legislative acts, applies equally to federal, state, and regional legislators); *Espanola Way,* 690 F.2d at 829 (local legislators are absolutely immune from federal damage claims for legislative acts); *Healy v. Town of Pembroke Park,* 831 F.2d 989, 993 (11th Cir.1987) (mayor and municipal commissioners were absolutely immune from personal liability for actions taken in their legislative capacity). "Although the mayor of the City of [Hialeah] is the elected chief executive officer of the city, he [too] is entitled to absolute immunity from suit for acts taken in a legislative capacity." *Hernandez v. City of Lafayette,* 643 F.2d 1188, 1193 (5th Cir. Unit A 1981). *See also Aitchison v. Raffiani,* 708 F.2d 96 (3rd Cir.1983) (municipal mayors and municipal councilmen are absolutely immune from damage claims under 42 U.S.C. section 1983 when acting in their legislative capacity).

The immunity doctrines are premised on the concern that the threat of personal liability will thwart the officials' ability to carry out their duties with the decisiveness and good faith judgment required. *Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974). The immunity doctrines, therefore, do not protect officials when they are not threatened with personal liability, such as when a complaint seeks injunctive relief. *Minton v. St. Bernard Parish School Bd.,* 803 F.2d 129, 134 (5th Cir.1986).

## III] ANALYSIS

### A] CALLING COUNCIL MEETING

■ The act of calling a council meeting and even urging persons to attend that meeting forms the essence of a democratically run government. Holding the meeting, in and of itself, even if its alleged purpose was to discuss the propriety of granting the Church of Lukumi a city-required permit to use the land as a place of worship, is not wrong. "Meeting with 'interest groups', professional or amateur, regardless of their motivation, is a part and parcel of the modern legislative procedures through which legislators receive information possibly bearing on the legislation they are to consider." *Bruce v. Riddle,* 631 F.2d 272, 280 (4th Cir.1980). The Supreme Court, in recognizing the indispensibility of legislative freedom, has stated that legislative immunity "will not [be] confine[d] ... to delivering an opinion, uttering a speech,

or haranguing in debate; but will extend it to the giving of a vote, to the making of a written report, and to every other act resulting from the nature, and in the execution, of the office...." *Tenney,* 341 U.S. at 374, 71 S.Ct. at 787 (quoting *Coffin v. Coffin,* 4 Mass. 1, 27 (1808)). Holding a city council meeting is an essential function of the legislative process for which council members and the mayor are entitled to absolute immunity.

Plaintiffs' concern regarding the council meeting is more properly attributable to what actually transpired at the meeting, i.e. proposing and passing resolutions and ordinances, rather than the meeting itself. Aside from what transpired at the meeting, which is discussed *infra,* this Court finds that the mere holding of the meeting for council members and the public is a legislative function for which no individual liability can attach against the councilmen and the mayor.

**B] ADOPTING FLORIDA STATUTES CHAPTER 828 (CRUELTY TO ANIMALS)**

 On June 9, 1987, the City Council of Hialeah adopted Florida Statute Chapter 828 as an emergency city ordinance. The Florida statute was adopted in its entirety, and identically, except for the penalty which added a jail sentence of up to sixty days.

An ordinance by its very definition is a legislative action. Florida Statute section 166.041(1)(a) defines "ordinance" as an "official Legislative action of a governing body, which action is a regulation of a general and permanent nature and enforceable as a local law." Fla.Stat.Ann. section 166.041(1)(a) (West 1987). There can be no dispute that the enactment of an ordinance is a legislative act which affords the named officials absolute immunity. *See Hernandez,* 643 F.2d at 1194 (the vote of a city councilman is an exercise of legislative decisionmaking just as a mayor's veto is, entitling the officials to absolute immunity); *Traweek v. City and County of San Francisco,* 659 F.Supp. 1012, 1031 (N.D. Cal.1984) (defendant officials' enactment of the ordinance held a legislative act).

Plaintiffs contend, however, that the above ordinance was improper, illegal, and unconstitutional and for that reason Defendants acted outside their legislative mandate and are not clothed with the legislative immunity otherwise afforded.[1] The determination of the legality of the ordinance, however, is not a necessary component to a determination of whether legislative immunity exists. *See Colon Berrios v. Hernandez Agosto,* 716 F.2d 85, 91 (1st Cir.1983) ("Legislative activities otherwise entitled to immunity in a section 1983 suit do not lose the full protection of that immunity merely because plaintiffs allege that such activities violate their constitutional rights.") The entire reasoning behind affording immunity for legislative acts is precisely to avoid this problem—a barrage of lawsuits challenging council members' votes and passage of specific laws. *See also Tenney,* 341 U.S. at 377, 71 S.Ct. at 788 ("The privilege would be of little value if they [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives."); *Gorman Towers v. Bogaslavsky,* 626 F.2d 607, 612 (8th Cir.1980) (the need for immunity for municipal legislators is apparent "because municipal legislators are closer to their constituents [and] they are more vulnerable to litigation and its

---

**1.** Plaintiffs' challenge to the ordinance as adopted by the city is that it is in direct conflict with the state statute. In Florida, pursuant to the powers granted in article VIII, section 2(b) of the Florida Constitution, municipalities may enact legislation concerning any subject matter upon which the state legislature may act, except, as relevant here, subjects expressly prohibited by the constitution, and any subject expressly preempted to the state or county government by the constitution or local law. Fla.Stat.Ann. 166.021(3)(b)—(c) (West 1987). Specifically, Plaintiffs' challenge is that the Florida Statute, Chapter 828, specifically states that a municipal ordinance on cruelty to animals may impose a civil penalty not to exceed five hundred dollars. The present city ordinance, however, provides for a maximum 60 day jail sentence, a non-civil penalty. The ordinance, therefore, is in derogation of the Florida statute. Further, the ordinance allegedly violates Plaintiffs' constitutional rights.

inhibiting effect"). Any charge that the legislation is itself substantively or procedurally flawed has no effect on the absolute immunity otherwise afforded. *Traweek*, 659 F.Supp. at 1030. Accordingly, the councilmen as well as the mayor are absolutely immune from any liability with regards to the adoption of this ordinance.

**C] RESOLUTION 87–66 (PASSED JUNE 9, 1987)**

On June 9, 1987, the City of Hialeah council passed Resolution No. 87–66 which was approved by the mayor. This resolution reiterated the City of Hialeah's commitment to a prohibition of acts of any and all religious groups which are inconsistent with public morals, peace and safety.

It is Plaintiffs' contention that the passage of this resolution is not a legislative act, but is rather an administrative act entitling the Defendants, at best, to a qualified immunity. Florida statute section 166.-041(1)(b) defines resolution as "an expression of a governing body concerning matters of administration, an expression of a temporary character, or a provision for the disposition of a particular item of the administrative business of the governing body." Fla.Stat.Ann. section 166.041(1)(b) (West 1987). Plaintiffs rely solely on this definition of "resolution" for their conclusion that the passage of a resolution is an administrative act. Defendants, on the other hand, argue that the mere passage of a resolution is *per se* a legislative act.[2] This Court, is not persuaded by either of these views. The correct avenue should be a specific inquiry into the type of resolution adopted to determine whether it was a legislative act. To ascertain whether the passage of this resolution was a legislative act, a court must determine whether the action resulted from the nature and execution of the official's legislative duties. *Tenney*, 341 U.S. at 374, 71 S.Ct. at 787.

A legislative act involves public-policy making as opposed to mere administrative application of existing policies. *Minton*, 803 F.2d at 135. The resolution here is nothing but the enunciation of a general policy. A challenge to the *enforcement* of this resolution as an unconstitutional deprivation of first, fourth, and fourteenth amendment rights may fall outside of the realm of legislative actions, *see Lockary v. Kayfetz*, 587 F.Supp. 631, 638 (N.D.Cal. 1984), however, such challenge is not at issue here. Plaintiffs have not alleged that any of these named Defendants have violated Plaintiffs' constitutional rights by virtue of their enforcement or implementation of the resolution. *See Gravel v. United States*, 408 U.S. 606, 618–20, 92 S.Ct. 2614, 2623–25, 33 L.Ed.2d 583 (1972) (Court recognized "jaundiced view" in denying immunity to one who enforces the very order issued with immunity.) The councilmen's adoption of this resolution is a legislative act entitling them to absolute legislative immunity. The mayor's approval of the resolution was a legislative function shielding him from any personal liability. *See Aitchison*, 708 F.2d at 99 (mayor's vote in favor of an ordinance is legislative activity). *Cf. Hernandez*, 643 F.2d at 1194 ("When mayor exercises his veto power, it constitutes policy-making decision of an individual elected official.")

**D] RESOLUTION 87–90 (PASSED AUGUST 11, 1987)**

On August 11, 1987, the city council proposed and passed a resolution declaring it the policy of the city to oppose ritual sacrifices of animals and declaring that any

---

2. Defendants cite *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 830 (11th Cir.1982), wherein the court could not determine whether the commissioners were acting in a legislative role because the commissioners only discussed crime and efforts to reduce it; "[n]o act or resolution was contemplated or passed. No vote was taken." Defendants argue that in sharp contrast to the *Espanola* case, the commissioners here were acting in a legislative role by virtue of adopting specified resolutions. This Court does not agree with that line of reasoning. In *Espanola*, the court simply could not determine whether the commissioners were acting in a legislative capacity because there was no act or resolution whose content could be examined by the court; there had only been a meeting of the city council and the city manager. Therefore, the issue was never addressed. We cannot say that *Espanola*, by implication, holds that the passage of an act or resolution is a legislative function. Passage of acts is a factor to consider only.

individual or organization that seeks to practice animal sacrifice in violation of state and local laws will be prosecuted. This resolution pronounces a general policy, the passage of which is clearly a legislative function entitling absolute legislative immunity to the councilmen and the mayor for the same reasons as stated above. *See supra* part C.

### E] PROPOSING THREE CRIMINAL ORDINANCES

█ The first of these ordinances prohibits the possession of animals for slaughter or sacrifice within the City of Hialeah. It also defines "animal" and "sacrifice." These definitions do not make exception for ritual slaughtering allegedly in conflict with the state statute. The second proposed ordinance prohibits the sacrificing of animals within the City of Hialeah. The third criminal ordinance prohibits the slaughtering of animals on any premises not properly zoned as a slaughterhouse and meeting city requirements for slaughterhouses. Both the latter two ordinances authorize any Florida corporation for the prevention of cruelty to children or animals to register appointed agents for the purposes of investigating and prosecuting violations of the ordinance. Each of the three ordinances provide a penalty for violation: a fine, not to exceed five hundred dollars, or a jail sentence, not to exceed sixty days, or both.

As stated previously with regard to the adoption of Florida Statute chapter 828 as an emergency city ordinance, there is no question but that the enactment of this ordinance is a legislative function providing absolute immunity to both the councilmen and mayor. *See supra* part B. The latter two ordinances, although not yet approved by the mayor, are no less legislative actions.

Plaintiffs also challenge the constitutionality and validity of these ordinances.[3] Plaintiffs argue that the officials were acting outside their legislative mandate by passing allegedly unconstitutional ordinances. As stated previously, this Court need not make an initial determination of the constitutionality of these ordinances before recognizing that the named individuals were acting legislatively, and therefore immune, when proposing and passing these ordinances. *See supra* part B.

### F] ACTIONS BY POLICE, CITY SANITATION AND FLORIDA POWER & LIGHT

Plaintiffs seek to hold the city councilmen as well as the mayor personally liable for "the actions of their subordinates in harassing the Plaintiffs by virtue of the atmosphere which they created within the municipality." Plaintiffs' Response to Motion for Summary Judgment at 13. Specifically, Plaintiffs seek to hold the individual Defendants personally liable for the police perimeter established at the boundaries and entrance to the church property; for the refusal and failure of the city sanitation to provide the church and its members with services; for "intervening and causing" Florida Power & Light to discontinue electrical services to the church building; and for causing church members to be detained by the police. The Plaintiffs contend that the city policy to oppose ritual animal sacrificing as well as the talk about individuals and organizations being prosecuted for practicing animal sacrifice created an atmosphere conducive to city employees performing acts of harassment against Plaintiffs.

█ The Defendants are in no way liable for Florida Power & Light discontinuing electrical services. On May 21, 1987 Florida Power & Light gave written notice to the Church of Lukumi Babalu Aye that pursuant to the Florida Administrative Code 25–6.105(5)(a), its service was going to be discontinued if a Certificate of Occupancy was not attained. It is apparent, therefore, that the councilmen and mayor did not spur Florida Power & Light to

---

3. Plaintiffs make the challenge that these ordinances were passed in derogation of or in conflict with Florida Statutes and are violative of Plaintiffs' constitutional rights. *See also supra* n. 2. With regard to the first mentioned ordinance which has become law, Plaintiffs make the additional challenge that its definitional section is in conflict with the Florida Statute 828.-22(3) regarding exemptions for religious purposes.

discontinue service but rather the Church's failure or inability to obtain the necessary Certificate of Occupancy caused their electrical services to be discontinued.

 In order to impose personal liability on these commissioners and the mayor for the acts of the police and the city sanitation, it is not enough to say that they may have created an atmosphere antagonistic to Santeria worshippers through their adopted legislative ordinances and resolutions. Of course, the municipality may be held liable under the civil rights statute if Plaintiffs have suffered a constitutional deprivation stemming from the municipality's official policy, *see e.g. Bradberry v. Pinellas County*, 789 F.2d 1513 (11th Cir.1986), although this Court makes no intimations of any such liability at this time. The individual officials, however, are not personally liable for any policy that they enacted in their legislative capacity even if it was the policy that caused others to allegedly deprive Plaintiffs of their constitutional rights.

 These individual Defendants cannot be held liable as superviory officials for the actions of the police, city sanitation, and Florida Power & Light unless they directed such actions or had personal knowledge of the wrongdoing. *Henzel v. Gerstein*, 608 F.2d 654 (5th Cir.1979). *See also Russ v. Ratliff*, 538 F.2d 799, 805 (8th Cir.1976) (city councilmen and mayor were not liable in a civil rights action to Plaintiff who was shot by a city policeman where there was no evidence that the defendants acquired any specific knowledge of the city policicman's propensities for violence). The individual Defendants attested that they neither directed, authorized, nor had prior knowledge of any of the alleged activities by the police, city sanitation or Florida Power & Light. Plaintiffs have not attempted to rebut the same. Liability certainly cannot be premised on a respondeat superior theory. *McLaughlin v. City of LaGrange*, 662 F.2d 1385 (11th Cir.1981) (like municipalities, supervisory officials cannot be held liable for the acts of employees solely on the basis of respondeat superior).

In order to sustain a section 1983 action against these named Defendants for the actions taken by their alleged subordinates, "Plaintiff[s] must show some causal connection between an act of the official and the alleged violations." *Henzel*, 608 F.2d at 658. Plaintiffs have alleged nothing more than that Defendants, by their policies, created an atmosphere conducive to acts such as these taking place. For this alone, Plaintiffs seek to hold the councilmen responsible as if they had performed the acts themselves. This Court concludes that the facts of this case do not warrant subjecting the individual Defendants to civil rights liability for the alleged atmosphere they created by their legislative acts, because no causal connection has been shown.

## IV] CONCLUSION

In sum, this Court holds that the councilmen and mayor are entitled to absolute legislative immunity in their individual capacities for holding a city council meeting and urging citizens to attend and for enacting city ordinances and resolutions. The councilmen and mayor are not personally liable for the acts of the police, city sanitation, and electrical company allegedly spurred by the "atmosphere" antagonistic to Santeria created through the enacted city policy because no causal connection was shown. Liability cannot attach by virtue of their supervisory role because they neither directed, authorized nor had prior knowledge of the alleged activities. In *reaching this conclusion, this Court does* not decide whether Plaintiffs first, fourth and fourteenth amendment rights were violated by any of these alleged activities. Nor does this Court decide whether the City of Hialeah may be held liable for these activities. This Court holds only that Silvio Cardoso, Salvatore D'Angelo, Herman Echevarria, Julio Martinez, Andres Mejides, Paulino Nunez, Ray Robinson and Raul Martinez cannot be held personally liable for monetary damages stemming from the allegedly unconstitutional activities for which Plaintiffs complain.