**FRANKLIN BUILDING CORPORATION,
et al., Plaintiffs,**

v.

**CITY OF OCEAN CITY,
et al., Defendants.**

**Civil Action No. 95–6323.**

United States District Court,
D. New Jersey.

Nov. 18, 1996.

Donald R. Daines, West Paterson, NJ, for Plaintiffs.

Stephen Eisdorfer, Hill Wallack, Princeton, NJ, A. Michael Barker, Horn, Goldberg, Gorny, Daniels, Plackter & Weiss, Atlantic City, NJ, for Defendants.

Frank Basile, Basile & Testa, Vineland, NJ, for Defendant, Henry Knight.

## OPINION

ORLOFSKY, District Judge.

Plaintiff, Franklin Building Corp. ("Franklin" or the "plaintiff"), has filed this action, on its own behalf and on behalf of several "John Doe" plaintiffs, against the City of Ocean City ("Ocean City"), its mayor, Henry Knight, the City Council of the City of Ocean City (the "Council"), the City Administrator, and several members of the Council both in their official and individual capacities. Franklin alleges that, by failing to pass a "resolution of need," the Council wrongfully blocked Franklin's proposed housing project.[1]

---

1. A "resolution of need" is a prerequisite to securing financing backed by the New Jersey Housing and Mortgage Finance Agency. In pertinent part, the New Jersey Housing and Mortgage Finance Agency Law of 1983 provides:

No application for a loan for the construction, improvement or rehabilitation of a housing project containing rental units to be rented at below market rates to be located in any municipality shall be processed unless there is already filed with the secretary of the agency a certified copy of a resolution adopted by the municipality reciting that there is a need for such housing project in the municipality.
N.J.Stat.Ann. § 55:14K-6 (West 1989).

. Plaintiff principally alleges that the Council's failure to approve its request for a "resolution of need" constituted a violation of the Fair Housing Amendments Act of 1988 ("FHAA" or the "Act").[2] Plaintiff also claims that defendants violated Section 504 of the Rehabilitation Act of 1973,[3] denied the plaintiffs equal protection and due process of law, violated 42 U.S.C. § 1983, violated the New Jersey Constitution, New Jersey's Municipal Land Use Law,[4] and New Jersey's Law Against Discrimination,[5] and tortiously interfered with Franklin's prospective economic advantage. The jurisdiction of this court is based upon 28 U.S.C. §§ 1331, 1343(a)(3) and 1367(a). Plaintiffs seek declaratory, and injunctive relief, as well as compensatory damages.

Plaintiff, Franklin Building Corporation, has moved for partial summary judgment on the issue of defendants' liability under the FHAA pursuant to Fed.R.Civ.P. 56(a). Defendants oppose Franklin's motion and have filed a cross-motion for partial summary judgment seeking to dismiss plaintiffs' claims based upon the FHAA and all claims against the individual defendants. These partial summary judgment motions require this court to determine the proper scope of a municipality's duties under the FHAA when presented with an ·application for a "resolution of need" pursuant to N.J.Stat. Ann. § 55:14K–6(c), and whether the City Council of Ocean City breached those duties in its consideration of Franklin's proposed housing project for seniors. In addition, defendants' cross-motion for partial summary judgment presents the question whether the defendants who are named in their individual capacities are insulated from liability by absolute legislative immunity or qualified immunity.

While a number of Circuit Courts of Appeals have addressed the FHAA in the context of denials of zoning variances or conditional use permits,[6] this appears to be a case of first impression insofar as it presents the question whether a municipality's failure to approve a "resolution of need," which precedes a zoning board decision, violates the FHAA.

How our society provides for its elderly is among the most sensitive of contemporary issues. The so-called "graying of America" has led commentators to question seriously whether sufficient facilities exist to serve this rapidly growing sector of our population.[7] Health care concerns often dominate the debate. However, considerable effort has been expended researching the availability of appropriate housing for the elderly. *See* David R. Mark, *N.J. lacking senior housing?*, Asbury Park Press, June 11, 1995, § G, at 1 (reporting a study by the American Affordable Housing Institute at Rutgers University, New Brunswick, N.J.).

Franklin contends that the actions of the City Council of Ocean City have reduced the housing options that would otherwise have been available for New Jersey's elderly. Ocean City contends that Franklin's proposal would not adequately have addressed the real housing needs of senior citizens, and that its opposition to the resolution of need was based upon a legitimate belief that Franklin's proposal would not have addressed the need for elderly housing. Because the summary judgment record is inadequate to resolve the issue of whether the Council's conduct violated the FHAA, partial summary judgment as to this issue must be denied. Although the applicability of the doctrine of legislative immunity to the facts of this case presents a close question, which I

2. Pub.L. No. 100–430, 102 Stat. 1636 (as codified at 42 U.S.C. §§ 3601–3631).

3. 29 U.S.C. § 794.

4. N.J.Stat.Ann. §§ 40:55D–1 to 55D–136 (West 1991 & Supp.1996).

5. N.J.Stat.Ann. §§ 10:5–1 to 5–38 (West 1976 & Supp.1996).

6. *See, e.g., Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096 (3d Cir.1996) (zoning); *Erdman v. City of Ft. Atkinson,* 84 F.3d 960 (7th Cir.1996) (conditional use permit); *Smith & Lee Associates, Inc. v. City of Taylor,* 13 F.3d 920 (6th Cir.1993) (zoning).

7. *See, e.g.,* Rachelle Garbarine, *Demand Grows for Housing the Aging and the Aged,* N.Y. Times, Aug. 20, 1995, § 9, at 11.

have resolved in plaintiff's favor, defendants' cross-motion to dismiss all claims against the Council members in their individual capacities will nevertheless be granted on the basis of the defendants' qualified immunity. Furthermore, all claims against Mayor Knight will be dismissed because the allegations in the complaint are insufficient as a matter of law to hold the Mayor liable. In addition, because plaintiff, Franklin Building Corp., does not allege either that it intends to continue to seek approval for the housing project in question, or that it will seek approval for a different project from the City of Ocean City, I conclude that Franklin lacks standing to sue for injunctive relief in this case.

## I. Facts

Franklin Building Corporation contracted to purchase the Flanders Hotel in Ocean City, New Jersey, with a view to converting the hotel into an "age restricted" rental property. Certification of Paul DeBellis in Support of Plaintiff's Motion for Summary Judgment ("DeBellis Certif.") ¶ 2. Franklin proposed to accept only tenants aged 55 and over and planned to set aside approximately twenty percent of the project's units for low and moderate income families. *Id.* ¶¶ 3, 18.

Franklin applied to the City Council of Ocean City for a "resolution of need," without which it could not secure financing from the New Jersey Housing and Mortgage Finance Agency ("NJHMFA").[8] Franklin alleges that this financing was critical to the success of its planned renovation of the Flanders. DeBellis Certif. ¶ 8. Franklin further contends that the City Council was aware that "it could not ... go forward with the proposed project" without NJHMFA financing. *Id.* ¶ 19.

When the approval of the "resolution of need" was moved before the Council, after several months and two public hearings, it failed to receive a second, thereby effectively defeating Franklin's application. DeBellis Certif., exhibit I, at 82. Faced with no possibility of obtaining NJHMFA-backed financing, Franklin abandoned the Flanders Hotel project.

## II. The Summary Judgment Standard

On a motion for summary judgment this court is required to view the underlying facts and all reasonable inferences drawn from those facts in the light most favorable to the party opposing the motion. *Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995) (citation omitted); *see also Helen L. v. DiDario,* 46 F.3d 325, 329 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995); *Valhal Corp. v. Sullivan Assocs., Inc.,* 44 F.3d 195, 200 (3d Cir.1995); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

Summary judgment should be granted only if the district court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 1355 n. 10, 89 L.Ed.2d 538 (1986). Once the movant has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed. R.Civ.P. 56(e)) (emphasis added in *Matsushita* ). The non-movant must present concrete evidence supporting each essential element of its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The question for this court, then, is whether concrete evidence exists which creates a dispute regarding a genuine issue of material fact. *See Gottshall v. Consolidated Rail Corp.,* 56 F.3d 530 (3d Cir.1995); *Big Apple BMW, Inc. v. BMW of North Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,*

---

8. Franklin also sought a property tax abatement arrangement with Ocean City called a Payment in Lieu of Taxes, or "PILOT" agreement. Franklin abandoned its request for the PILOT agreement prior to the final City Council meeting on the Flanders Hotel project. This court does not read Franklin's complaint to make any claim for relief based upon its failure to secure the PILOT agreement.

507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993); *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1381 (3d Cir. 1991). "Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (citations omitted).

## III. Discussion

### A. *Standing*

■ Defendants contend that Franklin lacks standing to sue under the Fair Housing Act. The requirement of standing tests "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Standing, or the lack of it, is a question of justiciability under Article III, and thus, goes to this court's jurisdiction, a threshold consideration in every case filed in federal court.

■ Generally, one cannot assert the rights of third parties in a suit in federal court. *See Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). However, the Supreme Court has concluded that the Fair Housing Act extends standing to any party who can demonstrate injury in fact, the Article III minimum threshold for standing. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 377–78, 102 S.Ct. 1114, 1123–24, 71 L.Ed.2d 214 (1982). Indeed, under the FHAA, a plaintiff builder may assert the rights of third-party "John Does" who allegedly would have benefited from the proposed housing. *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096, 1100 n. 2 (3d Cir. 1996).

■ Notwithstanding this clear mandate to interpret the standing requirement broadly in cases brought under the Fair Housing Act, defendants contend that Franklin lacks standing because it is "not within the class of persons intended to be protected by Congress in enacting the Fair Housing Act,"

since it did not intend to lease units in its finished project to "handicapped" older adults. Defendant's Brief at 15. The standing requirement focuses upon the allegations of the complaint. "All decisions about standing are made on the basis of the pleadings, assuming all allegations within them to be true." Erwin Chemerinsky, *Federal Jurisdiction* 76 (2d ed. 1994). Franklin has alleged that defendants discriminated on the basis of handicap, namely, the misperception that the potential residents of the Flanders Hotel project would be incapable of independent living because of their age, and that Franklin has suffered economic injury as a result of this discrimination. To require more from Franklin to confer standing would transform the standing inquiry into a judgment on the merits. If the intended tenants of Franklin's proposed housing project do not fit within the definition of handicapped persons, plaintiffs cannot prevail on the merits. This, however, is beyond the scope of this court's inquiry into the question of plaintiffs' standing.

Defendants further contend that Franklin lacks standing because it has no continuing economic interest in the Flanders Hotel project. Defendants rely upon *Nasser v. City of Homewood,* 671 F.2d 432, 437–38 (11th Cir. 1982), for the proposition that Congress did not intend "to entrust the enforcement of the Fair Housing Act" to developers who suffered only economic injury and whose project was no longer "viable" when suit was filed.

Notably, although *Nasser* was decided approximately one month after the Supreme Court's decision in *Havens Realty,* the Eleventh Circuit makes no mention of that case. Thus, it is not immediately clear that *Nasser*'s view of the proper extent of standing under the Fair Housing Act entirely comports with more recent cases. If there is, indeed, any conflict, this court must follow *Hovsons.*

Moreover, *Nasser* is easily distinguished from *Hovsons* and the present case. The basis for denying plaintiffs standing in *Nasser* was the absence of any "allegation of interference with the plaintiffs' rights or that [the plaintiffs] have aided or encouraged any other person in the exercise or enjoyment of

any right protected by the Act." *Nasser,* 671 F.2d at 438. Franklin in fact alleges that the City of Ocean City illegally discriminated against the "John Doe" plaintiffs on the basis of perceived handicap. Complaint ¶¶ 55, 100.

▮▮▮ Finally, defendants contend, in the alternative, that Franklin lacks standing to seek injunctive relief, because it has no continuing interest in the Flanders Hotel project. In addition to "injury in fact," Article III requires that the injury be of a kind that will be redressed by a favorable decision. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984).

In *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Supreme Court questioned the standing of a black motorist who alleged that the police had violated his civil rights when they restrained him in a chokehold. Lyons was allowed to seek damages, but was denied injunctive relief on the theory that he could not show a "sufficient likelihood" that he personally would run afoul of the Los Angeles Police Department in the future and, therefore, that he would again face the same alleged illegal conduct. *Id.* at 111, 103 S.Ct. at 1670; *see also O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Defendants assert that the absence of any allegation that Franklin will face future harm from the City of Ocean City mandates dismissal of Franklin's claims for injunctive relief.

This case is distinguishable because it simply "does not require the kind of judicial interference with law enforcement structure that seemed to give the Supreme Court pause in both *Lyons* and *O'Shea.*" *Davis v. Thornburgh,* 903 F.2d 212, 226 n. 6 (3d Cir.) (citing Paul M. Bator, et al., *Hart and Wechsler's The Federal Courts and The Federal System* 267–68 (3d ed. 1988)), *cert. denied sub nom. Davis v. Cohen,* 498 U.S. 970, 111 S.Ct. 436, 112 L.Ed.2d 420 (1990). For understandable reasons, when a case involves a police department, the Supreme Court has "been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." *Honig v. Doe,* 484

U.S. 305, 320, 108 S.Ct. 592, 602, 98 L.Ed.2d 686 (1988).

This case involves no such concerns. In fact, this case is much closer to those cases in which the plaintiff seeks injunctive relief to redress an alleged denial of equal protection. *See Adarand Constructors, Inc. v. Peña,* —— U.S. ——, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995); *Associated General Contractors v. City of Jacksonville,* 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). Indeed, the denial of equal protection is one of Franklin's claims in this suit. In such cases, standing to seek injunctive relief is established if the plaintiff contractor has alleged that it regularly seeks the type of business which allegedly was denied it through defendant's illegal conduct. *Adarand Constructors,* —— U.S. at ——, 115 S.Ct. at 2105; *General Contractors,* 508 U.S. at 667–69, 113 S.Ct. at 2304. However, even under the *Adarand* standard, rather than *Lyons,* Franklin does not have standing to seek injunctive relief. A thorough review of plaintiffs' complaint reveals no allegation of an intention to develop any similar project in the immediate future in the City of Ocean City which would require a "resolution of need." Accordingly, I conclude that plaintiffs lack standing to seek injunctive relief.

## B. Prima Facie Discrimination

Having concluded that this case is justiciable, albeit only as to plaintiffs' claims for damages, I now turn my attention to the merits of the competing motions for partial summary judgment. The Fair Housing Amendments Act of 1988 extended the protections of the Fair Housing Act to persons with disabilities. In pertinent part, the Act provides:

Handicap means, with respect to a person—

(1) a physical or mental impairment which substantially limits one or more of a person's major life activities,

(2) a record of having such an impairment,

(3) *being regarded* as having such an impairment. . . .

42 U.S.C. § 3602(h) (emphasis added). The Act substantially borrowed its definition of

"disability" from Section 7 of the Rehabilitation Act of 1973.[9]

Franklin does not, indeed, it cannot assert that the John Does are disabled under either the first or second prong of § 3602(h). Instead, Franklin asserts that the John Does are members of the protected class by virtue of "being regarded as having" a disabling impairment.

This third prong of the "disability formula" is designed to combat invidious stereotypes. According to Judge Posner, a definition of disability that includes "being regarded as disabled,"

> although at first glance peculiar, actually makes a better fit with the elaborate preamble to the Act, in which people who have physical or mental impairments are compared to victims of racial and other invidious discrimination. Many such impairments are not in fact disabling but are believed to be so, and the people having them may be denied employment or otherwise shunned as a consequence. Such people, objectively capable of performing as well as the unimpaired, are analogous to capable workers discriminated against because of their skin color or some other vocationally irrelevant characteristic.

*Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538, 541 (7th Cir.1995) (applying the definition in the context of employment discrimination).

In broadly defining "disability" to include invidious stereotypes, "Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987) (discussing Section 504 of the Rehabilitation Act). Franklin contends that the Council stereotyped the would-be tenants of the facility when it expressed concern that the John Does would not be able to live

independently. This court agrees that invidious stereotyping of our elder citizens persists in our society.

Ordinarily, a plaintiff in a discrimination suit must demonstrate both membership in the protected class and an act of discrimination directed towards him or her. The third prong of the Act's definition of disability collapses these two requirements into a single inquiry: Did the defendants intentionally discriminate against the plaintiffs because of a misperception that the John Does were disabled? If the plaintiffs can show that the Council acted out of this mistaken belief, then the plaintiffs will have demonstrated both membership in the protected class and the intent by the Council to discriminate.

Franklin alleges that the Council refused to pass a resolution of need because it regarded the John Does as handicapped and that this misperception was an act of discrimination in violation of the FHAA. As an example, Franklin points to a letter dated March 7, 1995, from Gerald J. Corcoran, Esq., Ocean City Solicitor, to Michael A. Fusco, II, Esq., the attorney for Franklin, in which Mr. Corcoran relates the city administration's opposition to the Flanders Hotel project, stating in part that "it is unrealistic to expect that all occupants of the facility will be in good health and that they will not need walkers, canes, wheelchairs and similar assistance from time to time." DeBellis Certif., exhibit B–1, at 2. Mr. Corcoran also doubts that the dining room, as proposed, would accommodate the projected 300 residents, in part, he observes because of the need to spread the tables well apart "because of the age of the occupants and their dexterity and physical needs." *Id.* at 3.

There is some evidence in the summary judgment record that defendants simply disbelieved Franklin's assertions regarding its would-be tenants. Defendants claim they believed that the project, as described by

---

9. The legislative history illustrates Congress's intent that the definition of disability in the Fair Housing Amendments Act should be interpreted consistently with the definition of disability contained in the Rehabilitation Act. *See* H.R.Rep. No. 711, 100th Cong., 2d Sess. 22 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2183.

A similar definition was subsequently incorporated into the Americans with Disabilities Act of 1990, Pub.L. No. 101–336, 104 Stat. 327 (as codified at 42 U.S.C. § 12102(2)), so that cases interpreting the ADA are relevant to this discussion.

Franklin, would be subject to state regulation. Affidavit of Richard Deaney ¶ 32. In fact, Richard Deaney, the city administrator, explains at one point that the City sought information from Franklin "as to how the medical needs of residents would be met." *Id.* ¶ 27.

Also relevant to this determination are the statements of municipal officials. *See Easter Seal Society of New Jersey, Inc. v. Township of North Bergen,* 798 F.Supp. 228, 234 (D.N.J.1992). Ocean City's Mayor, Henry "Bud" Knight, allegedly urged the Council to oppose the "resolution of need." Plaintiff's Reply Brief at 24.[10] Mayor Knight asserts that he has "no specific recollection," but was "generally opposed" to the Flanders Hotel Project because he felt "it was not in the best interest of the economic development of the City of Ocean City as a resort community." Affidavit of Henry F. Knight ¶ 4.

Defendants contend that there is no admissible evidence in the record to support the conclusion that members of the Council discriminated on the basis of "perceived handicap" in failing to approve a resolution of need for the Flanders Hotel project. Defendants argue that the FHAA does not require a municipality to grant concessions to a builder whose proposed project serves the non-handicapped elderly. Defendant's Brief at 24–25 (citing *Brandt v. Village of Chebanse,* 82 F.3d 172 (7th Cir.1996)). It is true that nothing in the FHAA forbids a municipality from denying a zoning variance or any other accommodation to a builder based upon strictly neutral factors. *Brandt,* 82 F.3d at 173 (concern for possible flooding justifies refusal to approve builders proposal). Based upon the summary judgment record before this court, however, it is not possible to determine, as a matter of law, that Ocean City acted only out of a legally permissible concern for "economic development," untainted by any impermissible characterization, or invidious stereotyping of the potential residents of the Flanders Hotel project as "handicapped." Rather, this inquiry, like all inquiries into intent, is difficult to resolve on

summary judgment. *See id.* ("The magistrate judge ... could have found ... that the Trustees' reasons were pretextual.").

For purposes of these motions, therefore, it cannot be said that Franklin has failed to make out a *prima facie* case of discrimination in violation of the Act. Accordingly, summary judgment in favor of defendants on plaintiffs' claims based upon the FHAA must be denied.

Franklin, however, cannot prevail on its motion for partial summary judgment on the strength of its *prima facie* case alone. In order to prevail on summary judgment, Franklin must show that there are no genuine issues of material fact. Franklin has failed to demonstrate that there are no genuine issues of material fact regarding the intent to discriminate, *vel non,* on the part of the Council. This is more than an issue of material fact, it is the single most important issue of material fact in this case. Absent a showing of an intent to discriminate on the basis of a "perceived handicap," plaintiff's *prima facie* case collapses. It is usually inappropriate to resolve matters of intent, which, by their nature, often involve credibility determinations, on a paper record. Accordingly, partial summary judgment in favor of plaintiff on defendants' liability under the FHAA must also be denied.

## IV. Immunity

Mayor Knight and the individual defendants have moved for summary judgment on the basis of the immunity from civil liability enjoyed by certain public officials, or, alternatively, based upon First Amendment protection for speech related to matters of public interest.[11]

### A. *Mayor Henry Knight*

First, Mayor Knight asserts that he is not a member of the City Council and that he has no vote on matters before the City Council. Affidavit of Henry F. Knight at 1–3. Nor is the Mayor's signature required to implement any resolution of the Council. *Id.*

---

**10.** Here, as elsewhere in its brief, Franklin fails to cite to the record in support of this contention.

**11.** Because this court resolves this issue on immunity grounds it is not necessary to discuss defendants' First Amendment defense.

The summary judgment record contains no evidence that any statement made by Mayor Knight was made other than in his capacity as Mayor; in which capacity, it is undisputed that he had no vote on the resolution, and therefore could not control the outcome of the Council meeting. *See Proviso Ass'n of Retarded Citizens v. Village of Westchester,* 914 F.Supp. 1555, 1565 (N.D.Ill.1996). The plaintiffs cannot demonstrate that Mayor Knight is liable in his official capacity, for the obvious reason that he played no role in the challenged action of the Council. Furthermore, because plaintiffs have presented no evidence tending to show that Henry F. Knight, as an individual, acted to deny plaintiffs an opportunity to construct and live in the proposed Flanders Hotel project, summary judgment will be granted in favor of defendant, Henry Knight.[12]

### B. *The Individual Council Members*

The other individual defendants, members of the Council and the City Administrator, contend that they are entitled to legislative immunity and/or qualified immunity for the actions which form the basis of this suit.[13]

#### (1) *Legislative Immunity*

▬ Defendants contend that they are entitled to absolute immunity for legislative acts. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). A defendant member of a federal, state or local governing body is cloaked in this immunity when the challenged action is both "substantively" and "procedurally" legislative. *Acierno v. Cloutier,* 40 F.3d 597, 610 (3d Cir.1994). An action is "substantively" legislative, as opposed to administrative, executive or managerial, when it involves "a policy-making or line-drawing decision." *Id.* A governing body's

decision is "procedurally" legislative, when it is "undertaken through established legislative procedures." *Id.*

In *Acierno,* the Third Circuit admitted that this two-prong test is not always easy to apply. *Acierno,* 40 F.3d at 611. Rejecting any "bright line" which would delineate administrative and legislative functions, the *Acierno* court held that an ordinance of a County Council that voided a previously approved record development plan was administrative in nature, whereas an ordinance passed by the same council that rezoned a certain parcel of property was "substantively" legislative. *Id.* at 612. The district court in *Acierno* had ruled that the latter ordinance was "administrative" in that it affected only a small number or a single individual. The *Acierno* court reversed, pointing out that this consideration was but a single factor in the analysis of whether an act is "legislative," and was never meant to be dispositive of the question. *Id.* The court distinguished cases in which the challenged decision involved a denial of a variance or building permit, and was declared administrative in nature, from a rezoning decision such as was before the court. *Id.* at 613.

▬ The Appellate Division of the Superior Court of New Jersey has declared that it is "a recognized tenet of municipal law that the term 'ordinance' encompasses matters legislative in character while the term 'resolution' refers to matters administrative or procedural in nature." *Albigese v. Jersey City,* 129 N.J.Super. 567, 569, 324 A.2d 577 (App.Div.1974). It is equally clear that N.J.Stat.Ann. § 55:14K–6 specifies a "resolution" of the municipality,[14] and, unlike some other New Jersey statutes, does not allow the municipality to choose to proceed either by an ordinance or by a resolution. However, I do not find the Appellate Division's general explanation of usage, or the statute's

---

**12.** This decision renders unnecessary any discussion of whether the Mayor enjoys First Amendment protection for statements he allegedly made to the press and others concerning the Flanders Hotel project.

**13.** It is unclear from the summary judgment record whether the city administrator, Richard Deaney, had or did not have a vote on the resolu-

tion. However, because Deaney has defended on the same grounds as the city council members the court has chosen to consider him along with the city council members for the purposes of these motions.

**14.** For the text of this statute, see *supra,* note 1.

restrictive language, dispositive of the issue of legislative immunity. Rather, a district court must conduct "a specific inquiry into the type of resolution adopted to determine whether it was a legislative act." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 688 F.Supp. 1522, 1527 (S.D.Fla. 1988). If a resolution implicates broad policy or establishes guidelines for an entire group of persons, its consideration by a local governing body is "substantively" legislative. *Rogin v. Bensalem Tp.,* 616 F.2d 680 (3d Cir.1980), *cert. denied sub nom. Mark–Garner Associates, Inc. v. Bensalem Township,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). If, however, the governing body merely applies broad policy, previously established by legislative acts, to a specific instance, that body's act is administrative in nature.

In *Three Rivers Cablevision, Inc. v. City of Pittsburgh,* 502 F.Supp. 1118 (W.D.Pa.1980), the district court addressed the immunity of legislative defendants in the context of a challenge by a disappointed bidder for a city cable television contract. The court held that the city council resolution authorizing the award of the contract was administrative in nature in that it turned on the application of existing legislation to a specific situation. *Id.* at 1135–36.

The application of the legislative immunity doctrine to the facts alleged by Franklin poses an exceedingly close and difficult question. On the one hand, whether there is a need for senior housing in Ocean City has the appearance of a public policy question. On the other hand, the statutory basis for a "resolution of need," N.J.Stat.Ann § 55:14K–6, provides no criteria for the municipality to use, as it arguably should if the question were one involving policy, but focuses instead on the applicant for NJHMFA-backed financing. This statutory focus on the individual project makes the municipality's decision to grant or deny a resolution of need appear to be an administrative act.

The absence of legal precedent, or statutory mandate relating to resolutions of need, makes it difficult to state with assurance that the adoption of a resolution of need merely requires a municipality to apply its existing policies to a given set of facts. *See Three Rivers Cablevision,* 502 F.Supp. at 1136. Indeed, in this instance the City Council of Ocean City appears to have set about collecting legislative facts as if it were being asked to set policy for the City. Nevertheless, I conclude that legislative immunity should not apply to the Council's failure to adopt a resolution of need. I am convinced that the decision to adopt a resolution of need, the sole purpose of which is to allow a single developer to seek state-guaranteed financing for a single project, does not implicate the allocation of city resources or affect broad questions of public policy. Indeed, even within the narrow confines of senior housing, the failure to approve the resolution of need sought by Franklin does not imply that Ocean City will not approve a resolution of need for the next developer who seeks one. Thus, the issue presented to a municipality in deciding whether to approve a resolution of need is analogous to the selection of one bidder over another, as in *Three Rivers Cablevision,* rather than to the adoption of a zoning ordinance of general application. Therefore, the members of the City Council of the City of Ocean City do not enjoy absolute legislative immunity from civil liability for their actions surrounding the failure to approve the resolution of need for the Flanders Hotel project.[15] Accordingly, I will proceed to address whether the council members benefit from the more limited, "qualified immunity" from civil liability granted to officials who act in good faith.

### (2) Qualified Immunity

Notwithstanding my conclusion that absolute legislative immunity is unavailable to the Council members in this case, I cannot ignore the important policy goals served by the immunity doctrine. As the Third Circuit has noted:

> When considering whether members of local legislative bodies are entitled to immu-

---

**15.** Because the conduct in question fails to satisfy the first prong of the *Acierno* test, that it is "substantively" legislative, it is unnecessary to discuss the second prong, whether the Council's conduct in this instance was "procedurally legislative."

nity from suit, we have recognized that there is a compelling need for such a protective doctrine because of the severe chilling effect numerous suits for damages would have·on prospective officials. We also believe that adherence to the immunity doctrine is necessary in order to allow elected and appointed officials to make intelligent land use decisions without the constant fear of litigation infecting the decision-making process.

*Acierno,* 40 F.3d at 615.

■■■■ Officials engaged in discretionary governmental functions are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This test is objective, and, on a motion for summary judgment, a district court must determine whether a similarly situated reasonable public official could have believed that his or her actions were lawful in light of clearly established precedent. *Id.*

■■ In *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987), the Supreme Court noted that the appropriate inquiry is particularized and fact-specific; the contours of the right allegedly violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Thus, an official is immune from liability if the applicable law was unclear, or if a reasonable official could have believed that his or her conduct was lawful in light of precedent and the information he or she possessed. *See, e.g., Lee v. Mihalich,* 847 F.2d 66, 69 (3d Cir.1988) (directing entry of summary judgment where governing law was unclear at the time defendants acted).

■■ The Third Circuit recently summarized the difficulties a district court faces in deciding a question of qualified immunity; a decision which requires "a fact-intensive inquiry" and which, at the same time, must "be resolved as early in the litigation as possible." *Grant v. City of Pittsburgh,* 98 F.3d 116, 122 (3d Cir.1996) (citation omitted). Po-

tentially adding to those difficulties, the Third Circuit, for the first time, declared that "courts are not barred from examining evidence of a defendant's state of mind in considering whether a plaintiff has adduced sufficient evidence to withstand summary judgment on the issue of qualified immunity, where such state of mind is an essential element of the ... violation itself." *Id.* at 124. The alleged discrimination on the part of the council ·members involves their improper "perception" of handicap, a question concerning their state of mind which is central to this case. If it is shown that the council members did not act out of this improper "perception" of handicap, then there has been no violation of the FHAA.

Because *Grant* was decided after briefs were filed on these motions, and because the Third Circuit announced new principles affecting qualified immunity, the court ordered supplemental briefing of *Grant*'se possible effect on the outcome of the City of Ocean City's motion. These briefs have now been submitted and reviewed by the court. Intriguingly, both parties take the position that *Grant* has no effect on the outcome of Ocean City's motion. Plaintiff reiterates its position that the council members violated "clearly established law," and has submitted virtually nothing to address the state of mind of the individual defendants. The City of Ocean City, not surprisingly, maintains that the council members cannot have violated the FHAA because the proposed residents of the Flanders Hotel project were not handicapped.

■■■■ *Grant* clearly places upon the plaintiff seeking to defeat summary judgment on the qualified immunity issue the burden of producing evidence of illicit motive in cases where motive is an essential element of the alleged violation. *Id.* at 126. Franklin has not carried this burden. If this were not enough to support summary judgment for Ocean City, *Grant* further elaborates upon *Anderson*'s requirement that, "to defeat qualified immunity it is not sufficient that the right at issue be clearly established as a general matter. Rather, the question is whether a reasonable public official would know that his or her *specific conduct* violated

clearly established rights." *Grant,* 98 F.3d at 121. It cannot be said that a reasonable public official in the position of the council members in this case, even if acting out of an improper motive, would have known that his or her specific conduct violated "clearly established" law.

This case involves the proper scope of a municipality's duties under the FHAA when confronted with a request for a resolution of need pursuant to N.J.Stat.Ann. § 55:14K–6(c). Franklin contends that the resolution of need is not project-specific or site-specific. In other words, Franklin asserts that the Council's inquiry into whether the Flanders Hotel was a suitable location for age-restricted housing was unnecessary at best, and illegal at worst. In support of this assertion, Franklin points to statements made by its attorney in presenting the request for the resolution of need to the Council. DeBellis Certif., exhibit G, at 8. Franklin also submits a letter from the NJHMFA which states that such a resolution "need not be p[roject specific." *Id.,* exhibit A–1. The latter exhibit, however, is dated March 23, 1996, well after this suit was filed, and therefore cannot have played any part in the Council's deliberations. In any event, the resolution which the Council failed to approve was, indeed, specific to the Flanders Hotel project. *Id.,* exhibit A–3. Furthermore, this resolution was drafted by the City of Ocean City. *Id.* ¶ 27.

Defendants apparently relied upon the advice of the city solicitor in deciding whether the resolution of need would be general or site specific. There are no reported decisions defining the scope of such a resolution. The governing statute calls for the adoption of a resolution "that there is a need for such housing *project.*" N.J.Stat.Ann. § 55:14K–6(c) (emphasis added). As noted, the NJHMFA's letter expressing the opinion that the resolution need not be project specific was apparently solicited by the plaintiff only after this suit was filed. Moreover, there are no reported decisions applying the FHAA to a municipality's decision whether to approve a resolution of need. Although there are published cases under the FHAA involving local officials' decision-making with

regard to proposed housing projects for the handicapped, there are none involving improper "perception" of handicap.

Based upon all the available evidence, therefore, I conclude that, even if the actions of the City Council of the City of Ocean City in this case are ultimately found to be illegal, at the time of the Council's consideration of the issue, a reasonable council member could certainly have believed that his or her actions were lawful in light of existing legal precedent and the information he or she possessed. As the Third Circuit has stated, there is an important

> distinction between the intention to act that forms the element of a ... violation (race discrimination, for example) and the intention to violate the law. Not all ... violations are ... "clearly established".... In instances of violations which are not clearly established, a showing of improper motive will not defeat a qualified immunity claim.

*Grant,* 98 F.3d at 125 n. 6. This is one such case. Even if it could be shown that the individual council members acted out of an improper intent to discriminate on the basis of perceived handicap, and it must be stressed that no evidence to support this assertion as to the individual council members can be found in the summary judgment record, the completely untested state of the law regarding the effect of the FHAA on a municipality's consideration of a request for a resolution of need, makes it impossible to conclude that a reasonable public official in these circumstances would have known that he or she was violating "clearly established" law. Accordingly, I conclude that the individual defendants are insulated from liability in this case by the doctrine of qualified immunity. Summary judgment will be entered dismissing the complaint as against the individual defendants.

## V. Conclusion

For the reasons set forth above, plaintiff's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56(a) will be denied. Defendants' cross-motion for partial summary judgment will be granted in part, and denied

**1174**

in part. The Court will enter an appropriate order.