711 A.2d 944 (1998)
312 N.J. Super. 321
Thomas G. DUNN, Mayor of the City of Elizabeth, Plaintiff, and
The City of Elizabeth, Plaintiff-Respondent, and
Jewish Educational Center, a nonprofit corporation of the State of New Jersey, Robert and Rebecca Heizler, Gino and Biagia Terrana, Steven and Aviva Singfer, Edward and Chavvah Schwartz, Joseph and Sandra Waldman, Frank and Gladys Aguirre, Emil and Shirley Hyman, Joseph and Deborah Oratz, William and Ida Hashkowitz, Irwin and Edith Bruck, Arthur and Helene Scheuer, Stanley Gutowski, Joseph and Belle Lava, Jules and Ann Brotsky, Peter and Joyce Puglese, Ben and Myra Greenblatt, Victor and Mimi Cohen, Arthur and Reda Rifkin, Leonard and Sarah Sausen, Martin and Sheila Nashofer, Shirley Sausen, Shalom and Charlotte *945 Rakovsky, David and Marily Cheslow, Joseph and Helene Wenger, Joseph and Molly Rothstein, Loenard and Annette Lauer, Michael and Geraldine Bergman, Cyril Ian and Edna Alexander, Moshe and Cheryl Abramowitz, Avraham and Rivka Pinsker, Gordon and Yanina Haas, Howard and Hadassa Goldsmith, Sheldon and Janice Weinreb, Louis and Sylvia Schneider, Ronald and Rivka Gross, Matthew and Amy Troop, Neil and Mavis Rosenstein, Hobart and Ahuva Spitz, Joseph and Hanna Goldberg, Mark and Zilpah Nulman, Daniel and Deborah Sheinbein, Nicholas and Gladys Rivero, Getty and Renee Krul, Herbert and Beth Russ, and Mary Kennedy, Glen and Lisa Bond; Leonard and Lauren Albuquerque; Thomas and Mary Noonan; Solomon Galimidi; James and Rose Keenan; Nelson and Monica Cedeno; Irving and Eva Goldstone; Steven and Karen Ostrove; Seymour and Phyllis Bruck; Mohammad and Bibi Haniff; David and Faige Horning; Al and Miriam Reisman; Kenneth and Susan Mandel; John and Carol Cascio; Peter and Joyce Puglese; Jacqueline Koplowitz; Louis and Laura Fleischman; Jonathan and Bela Wayne; and Vincent Scult, et ux, Plaintiffs/Intervenors,
v.
STATE of New Jersey, DEPARTMENT OF HUMAN SERVICES; Alan J. Gibbs, Commissioner of the Department of Human Services; and Social, Educational, Residential and Vocational Programs of New Jersey, Inc., a non-profit corporation, Defendants, and
Peter Moriello and Samuel Lachs, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1998.
Decided June 15, 1998.
*946 Robert Brotman, Elizabeth, for defendants-appellants (Mr. Brotman, of counsel and on the joint brief).
Raymond T. Bolanowski, First Assistant City Attorney, for plaintiff-respondent (William R. Holzapfel, City Attorney, attorney; Mr. Bolanowski, on the brief).
Before Judges PRESSLER, WALLACE and CARCHMAN.
The opinion of the court was delivered by
CARCHMAN, J.S.C. (temporarily assigned).
Defendants Peter Moriello and Samuel Lachs owned real estate located at 637 Livingston Road, in City of Elizabeth (plaintiff or City). Defendant Social, Educational, Residential and Vocational Programs of New Jersey, Inc. (SERV), contracted to purchase this property for the purpose of converting it to use as a group home for eight emotionally disturbed teenagers. Funding was to be provided by defendant State of New Jersey, Department of Human Services.
After initially approving the plan and issuing a building permit and after the necessary renovations were nearly completed, the City issued a stop work order. The City, together with the intervenors, who are neighbors or parents of students enrolled in a school near the site, sought to terminate the project. SERV and Moriello countered by alleging violations of the Fair Housing Amendments Act (FHAA), 42 U.S.C.A. §§ 3601 to -3619, and the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42.
After a trial, the trial judge found FHAA and LAD violations and awarded declaratory and injunctive relief, as well as damages to Moriello; no damages or other relief were awarded to Lachs.[1] On appeal, Moriello challenges the trial court's refusal to consider the damages he incurred during the twentyone *947 month period between conclusion of the trial and the court's rendering of the decision. Moriello and Lachs also challenge the denial of their request for counsel fees.[2]
We conclude that Moriello is entitled to the damages he sustained not only to the time of trial but also to the time of the court's decision. We reject the view that the trial judge's delay in rendering a decision tolled Moriello's damage claim. We further conclude that as a "prevailing party," Moriello was entitled to an award of counsel fees. As to Lachs, while he, too, was a "prevailing party," because he appeared pro se, he is not eligible for an award of counsel fees.
Because some understanding of the underlying facts is relevant to Moriello's damage claim, we briefly summarize the facts developed at trial. This dispute arose as a result of a proposal by the New Jersey Department of Human Services to fund the purchase of a property to be used as a group home to house emotionally disturbed adolescents. Moriello served as a general contractor for construction of a single-family dwelling on the property and obtained a building permit from plaintiff at the commencement of the project. After entering into a contract with SERV for his sale to it of the premises, he secured a remodeling permit. Moriello proceeded with the modifications in reliance on the permit and had completed approximately ninety-eight percent of the work when plaintiff issued the stop work order and, thereafter, refused to issue a certificate of occupancy. Because he was not permitted to complete the work, he suffered substantial financial damages.
The City brought an action to enjoin Moriello from completing the project. In challenging the purchase, plaintiffs and intervenors raised a number of issues including a violation of various provisions of the Municipal Land Use Law, N.J.S.A. 40:55D-66.1 and -66.2. SERV, and later Moriello, filed a counterclaim challenging, among other things, the validity of the stop work order and alleging violations of the FHAA and LAD. The issues having been joined, the matter was tried from December 5, 1994 to February 16, 1995 and consumed twenty trial days.
On November 12, 1996, the trial judge rendered his decision. In his eighty-two page comprehensive opinion, the trial judge found in favor of Moriello, Lachs and SERV. He invalidated certain zoning ordinance amendments designed to retaliate against the project, found certain provisions of the zoning ordinance unconstitutional and found that plaintiffs had violated both Moriello's and SERV's rights under the FHAA and LAD. He concluded that Moriello was an "aggrieved person" under both statutes and awarded Moriello[3] damages of $84,788.86, representing taxes, insurance, loan interest and utilities on the property from September 16, 1991 (the date of issuance of the stop work order) through November 30, 1994 (the eve of trial). In addition to the group home, SERV had contracted with Moriello to purchase condominium units on Newark Avenue. Damages of $19,200 for the loss of the fair rental income were awarded to Moriello. The judge commented:
In setting damages, I cannot go beyond the trial date, because it would neither be fair to [Moriello] or to the City for anyone to benefit or suffer the consequences of the time it took for the court to decide the matter.
Finally, SERV was awarded counsel fees of $35,000, while Moriello and Lachs were denied fees because "that falls within the court's discretion."
Moriello moved for reconsideration as to damages and both Moriello and Lachs moved for reconsideration of attorneys' fees. Moriello alleged that his damages on the Livingston Road house continued to accrue from December 1994 through November 12, 1996, when the court rendered its decision. He asserted that he paid property taxes in the amount of $8,862 during this time. He explained that in his experience as a builder for over twenty-five years in the City, the City did not make partial assessments on construction until the certificate of occupancy *948 was issued, and he confirmed this practice with the City's tax assessor. Nevertheless, at the conclusion of the trial, the City "imposed a partial added assessment on this property based upon the building being substantially complete." Moriello believed that this constituted "further retaliation" against him. Moriello also claimed interest expenses in the amount of $51,486.75 from January 1, 1995, through November 12, 1996.
The judge denied the motion for continuing damages, stating that an award for damages accrued after the trial "would have imposed upon the city a liability occasioned solely by this court's delay in rendering its decision. I felt that to be unfair to impose upon any litigant."
Regarding counsel fees, the judge found that "property owners are not necessarily aggrieved parties" under FHAA, since their interests are different from the interests of the disabled prospective residents whom the FHAA protects. He reasoned that since SERV represented the disabled, SERV was entitled to counsel fees. He also declined to award counsel fees to Moriello and Lachs reasoning that the City was a public entity and, thus, the taxpayers would ultimately be burdened with the obligation. He noted that the $35,000 he awarded to SERV for counsel fees was "a very modest figure ... not anywhere near a full fee." "I chose not to go further to award fees to either [Moriello or Lachs] simply because I felt I had then reached the total that ... fairly should be imposed upon the taxpayers of the City." This appeal followed.

I.
We first address the issue of the denial of damages from the date of trial to the date of the decision. We initially note our disagreement with the underlying premise of the trial judge's decision to deny damages during the interim period between trial and decision. While it might seem to be unfair to plaintiff to impose damages because of court delay, it is more unfair to penalize the damaged party for the delay. It was not the court but rather plaintiff that caused the damage in the first place. Thus, if the issue were to be resolved solely on equitable principles, the equities would favor Moriello, not plaintiff. We have alluded to denial of damages caused by delay in a different context in Gimello v. Agency Rent-A-Car Sys., Inc., 250 N.J.Super. 338, 367, 594 A.2d 264 (App.Div.1991), where we rejected a similar argument. As in Gimello, Moriello acted promptly in pursuing his legal remedies and prevailed. Plaintiff, even though a public entity, should not benefit from any delay not caused by Moriello.
There is, however, a more fundamental reason for not denying Moriello his post-trial, pre-decision damages. Litigation, by its very nature, is a long and time-consuming process. Not only is delay an accepted part of the litigation process, delay is built into the process itself. For example, our court rules provide for a minimum discovery period of 150 days, R. 4:24-1, a time which is extended routinely. A more practical consideration is that crowded court calendars delay trials for months and even years. Although efforts are constantly made to reduce such delay, where litigation is complex and sophisticated, as here, there will inevitably be delay at some stage of the litigation process. And where complex litigated matters are tried without a jury before a judge, there must be a realistic expectation that the trial judge may reserve decision in order to fully absorb the testimony, review exhibits and prepare a comprehensive decision which, as here, fulfills the judicial mandate to make comprehensive findings of fact and conclusions of law. R. 1:7-4. All the while, of course, the trial judge has other trial and administrative responsibilities as well.[4]
*949 Moriello's damages continued past the trial. R. 4:42-7 provides:
If damages are to be determined in respect of any continuing cause or action, they shall be determined to the time of the trial or assessment.

[Emphasis added]
The rule itself contemplates circumstances where damages continue. Where such damages continue, there can be no final assessment until the decision is rendered.
In Leslie Blau Co. v. Alfieri, 157 N.J.Super. 173, 210, 384 A.2d 859 (App.Div.), certif. denied sub nom., Leslie Blau Co. v. Reitman, 77 N.J. 510, 391 A.2d 523 (1978), plaintiff's damages were dependent on future rents being received. We adopted a rule permitting damages for a breach of contract for payments in installments, holding that the plaintiff was entitled to recover only the installments past due. Ibid. However, a judgment for past due installments "establish[es] the liability of defendant under the contract, as fully as if this were done by declaratory judgment; and on the principle of res judicata this will facilitate recovery on other installments as they fall due." Ibid. (quoting City of Hampton, Va. v. United States, 218 F.2d 401, 405 (4th Cir.1955)).
Moriello moved to re-open the proceedings and requested the trial judge to consider testimony regarding additional damages. The motion was denied. It is not clear from the trial judge's decision on this application whether he was barring any future claim by Moriello for these additional damages. We assume that was not the case, and Moriello's alternative was to file a separate action for these damages. Such a result does not serve anyone's interests, certainly not the litigants' nor the judiciary's.
We conclude that the appropriate course of action was to re-open the record for additional proofs as to damages. We note that liability had been determined, and it appears that the proofs required to establish such damages are minimal. The appropriate remedy now is a remand to the trial court to consider proofs and fix those damages accruing subsequent to the trial date.[5]

II.
We now address the issue of the denial of counsel fees. Moriello and Lachs challenge the judge's denial of their application for attorneys' fees, urging that they were "prevailing parties," and there were no special circumstances warranting denial of such an award.
The trial judge offered two reasons for denying the counsel fees requests of Lachs and Moriello. First, he found that "property owners are not necessarily aggrieved parties under the [FHAA]," since "[t]heir interests are quite different than the interests of" the prospective disabled residents, whom SERV represented. Second, the judge declined counsel fees to Lachs and Moriello because "the public treasury in the final analysis ... bears that cost."
We disagree. Property owners are aggrieved persons, with standing to maintain an action and recover damages under the FHAA, a conclusion reached by the trial judge in his initial opinion: "I find that Mr. Moriello is an aggrieved person under the [LAD] and the [FHAA]." Plaintiff argues that Lachs and Moriello were not "primary" or "direct victims" of the deprivation of housing rights. However, Moriello and Lachs cannot be classified as aggrieved persons for the purpose of entitlement to bring an action and collect damages, while at the same time be denied that status for the purpose of a counsel fee award.
42 U.S.C.A. § 3613(a)(1)(A) authorizes an aggrieved person to commence a civil action under the FHAA. 42 U.S.C.A. § 3602(i)(1) defines an aggrieved person as any person who "claims to have been injured by a discriminatory housing practice." See Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L. Ed.2d 214 (1982) (a plaintiff has standing under the Fair Housing Act if plaintiff suffered injury as a result of defendant's actions). In Growth Horizons, Inc. v. *950 Delaware Cty., Pa., 983 F.2d 1277, 1282 n. 6 (3rd Cir.1993) (citations omitted), the court explained that an aggrieved person under section 3602 "does not necessarily have to be the person discriminated against."
Developers are aggrieved persons under section 3602, with standing to bring an action under the Act. See, e.g., Hovsons Inc. v. Township of Brick, 89 F.3d 1096, 1100 n. 2 (3rd Cir.1996) (determining that a developer of a nursing home could pursue a claim under the FHAA). In Franklin Bldg. Corp. v. City of Ocean City, 946 F.Supp. 1161 (D.N.J. 1996), the court rejected the argument that plaintiff builder lacked standing because it was not within the class of persons which the FHAA intended to protect. The court explained that plaintiff had standing because it alleged that "defendants discriminated on the basis of handicap" and it "suffered economic injury as a result of this discrimination. To require more [ ] to confer standing would transform the standing inquiry into a judgment on the merits." Id. at 1166. An aggrieved party who is successful in his civil action under the FHAA is a prevailing party for purposes of reimbursement of attorneys' fees. See United States v. Security Management Co., Inc., 96 F.3d 260 (7th Cir.1996).
42 U.S.C.A. § 3613(c)(2) authorizes an attorney's fee to a prevailing party; under section 3602(o) the term "prevailing party" has the same meaning as under section 1988 of this title.[6] To qualify as a prevailing party under section 1988, "[a] party must demonstrate that his lawsuit was causally related to securing the relief obtained," and "had some basis in law." Singer v. State, 95 N.J. 487, 494, 472 A.2d 138, cert. denied sub nom., New Jersey v. Singer, 469 U.S. 832, 105 S.Ct. 121, 83 L. Ed.2d 64 (1984). The United States Supreme Court defined a prevailing party as one who succeeds on a significant issue, thereby achieving some of the benefit sought in the litigation. Texas State Teachers Ass'n v. Garland Independent School Dist., 489 U.S. 782, 791-92, 109 S.Ct. 1486, 1493, 103 L. Ed.2d 866, 877 (1989) and Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L. Ed.2d 40, 50 (1983). See also, J.H.R. v. Board of Educ. of Tp. of East Brunswick, 308 N.J.Super. 100, 112-14, 705 A.2d 766 (App.Div.1998).
We must distinguish between the claims of Moriello and Lachs. As to Lachs, even though he is an "aggrieved person" and ultimately a "prevailing party," there is a bar to an award of counsel fees which he cannot overcome. Plaintiff is correct that Lachs is not entitled to a counsel fee under the FHAA because he represented himself. In Kay v. Ehrler, 499 U.S. 432, 438, 111 S.Ct. 1435, 1438, 113 L. Ed.2d 486, 493 (1991), the Court denied a counsel fee under U.S.C.A. § 1988 to a pro se litigant, who was also an attorney, explaining: "The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." We find no reason why the same rule should not apply to applications under section 3613(1)(2). We agree that no counsel fees should be awarded to Lachs.
We now focus our attention on Moriello's claim. There is no question that Moriello suffered economic loss and was a prevailing party. He obtained significant declaratory and injunctive relief and damages in accordance with the FHAA and the LAD in the judgment resulting from his counterclaim.
As Moriello argues, "a prevailing plaintiff `should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Hensley v. Eckerhart, supra, 461 U.S. at 429, 103 S.Ct. at 1937, 76 L. Ed.2d at 48 (quoting S.Rep. No. 94-1011, at 4 (1976), U.S.Code Cong. & Admin.News 1976 at pp.5908, 5912). We have followed this mandate, awarding counsel fees to a prevailing party under section 1988 as a matter of course in the absence of special circumstances. Hunter v. Trenton Hous. Auth., 304 N.J.Super. 70, 74, 698 A.2d 25 (App.Div.1997) (FHAA and LAD action *951 against housing authority for permission to build a wheelchair ramp at plaintiff's front door); Stockton v. Rhulen, 302 N.J.Super. 236, 241, 695 A.2d 309 (App.Div.1997) (civil rights action against the State Racing commission to invalidate licensing requirement that owners and trainers purchase insurance from a specific company and agent); African Council v. Hadge, 255 N.J.Super. 4, 12, 604 A.2d 604 (App.Div.1992) (civil rights action against a township to obtain a permit to march in the street); Gregg v. Township Comm. of Hazlet, 232 N.J.Super. 34, 37-38, 556 A.2d 348 (App.Div.1989) (civil rights action against township committee for denial of due process in consideration of plaintiffs' application for a rent increase).
In Gregg, supra, we rejected the same argument advanced by plaintiff here:
Although the award of fees is discretionary, it was clearly the intent of Congress in passing section 1988 that fees be awarded as a matter of course.... [F]ees should be the rule rather than the exception and the special circumstances exception should be applied only in unusual cases. Thus, a trial judge's discretion in denying a fee is quite limited.

[232 N.J.Super. at 37-38, 556 A.2d 348 (citations omitted).]
The only special circumstances cited by the trial judge were that Moriello was not a direct or primary victim of the unlawful discrimination, and that the plaintiff is a public entity. Section 3613 does not limit counsel fee awards to direct or primary victims.
There is a more important consideration for awarding fees here to Moriello. Not only has he suffered damages as a direct result of plaintiff's unlawful discrimination, but an award of fees furthers the policy of both the FHAA and LAD. The fee-sharing provision provides an impetus to sellers and developers to participate in projects such as this group home. The development or sale of property for a group home or other similar enterprise is a project fraught with emotion and volatility. Invariably, it raises political issues within the community affected by the home's presence. Sellers and developers must be assured that if they are prepared to incur the legal costs inevitable in such a process and if a party engages in acts violative of the FHAA or LAD, the legal costs of such battle will not be ultimately borne by the seller or developer. Moriello and Lachs are, in their words, "willing sellers," without which there is "no sale" and no opportunity to eradicate housing discrimination.
Plaintiff's status as a public entity is not a special circumstance warranting denial of an award. We have consistently rejected this reasoning and awarded counsel fees against public entities. In Hunter v. Trenton Hous. Auth., supra, 304 N.J.Super. 70, 698 A.2d 25, we emphasized that "the fact that the party to be charged is a taxpayer-supported state agency" was not a defense to the prevailing party's claim for counsel fees. Id. at 75 n. 5, 698 A.2d 25.
Accordingly, as to Lachs, we affirm the determination denying his counsel fees. As to Moriello, we reverse and remand for a hearing to determine a) damages from the time of trial to the time of decision, and b) counsel fees. We do not retain jurisdiction.
NOTES
[1] Lachs' name appeared on the deed but only as an accommodation to secure financing that he provided to Moriello.
[2] Plaintiff did not appeal the decision of the merits of Moriello's claims.
[3] Lachs had no damages independent of Moriello.
[4] Even though not part of this record, it is a matter of public record (of which we take judicial notice, N.J.R.E. 201(b)(3); N.J.R.E. 202(b)) that during the time period in question here, the trial judge, by appointment of Chief Justice Wilentz was chairing the Assignment Judges' Budget Committee. This was during the transitional period as the State assumed fiscal responsibility for the State court system. As such, the trial judge was required to preside over extended judicial budget hearings, as well as appear before the Legislature during judiciary budget hearings. All of these responsibilities, in addition to his numerous other judicial responsibilities, apparently contributed to the delay.
[5] We will not exercise original jurisdiction as there is a discrepancy in Moriello's damage figures. He claims $64,111.93 in additional damages, but only certifies to $60,349.45. There is also a pending tax appeal that may impact on these damages.
[6] 42 U.S.C.A. § 1988, the Civil Rights Attorney's Fee Awards Act, does not define the term "prevailing party" but, like section 3613(c)(2), provides that, in a civil rights action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."